UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROY WAYNE IRELAND | ) | CHAPTER 7 |
| CHRYSTAL R. IRELAND | ) | |
|         DEBTORS | ) | CASE NO. 09-35456 |
| | ) | |
| | ) | |
| KENTUCKY NEIGHBORHOOD BANK | ) | |
| | ) | |
|         PLAINTIFF | ) | |
| | ) | |
|     V. | ) | ADV. PROC. NO. 10-3026 |
| | ) | |
| ROY WAYNE IRELAND, ET AL, | ) | |
| | ) | |
|         DEFENDANTS. | ) | |
| | ) | |

**MEMORANDUM-OPINION**

This Adversary Proceeding comes before this Court on the objection to discharge and nondischargeability complaint filed by the plaintiff, Kentucky Neighborhood Bank (the "Plaintiff" or "KNB") on March 18, 2010, against the defendants, Roy Wayne Ireland ("Wayne") and Chrystal R. Ireland ("Chrystal" or together the "Defendants"), the debtors in the underlying bankruptcy.[1] The Plaintiff contends that the Defendants have made false oaths or accounts in connection with their case and also that the Defendants should be denied a general discharge altogether under 11 U.S.C. § 727(a)(4)(A). The Plaintiff further contends that the Defendants obtained a sum of money from the Plaintiff under a loan agreement through false

---

[1] Village Green Landscaping, LLC also filed a complaint objecting to the Defendants' discharge on March 16, 2010, but voluntarily dismissed that proceeding on April 6, 2010 prior to the Defendants filing any responsive pleadings.

1

representations, false pretenses, or fraud and that the debt owed by the Defendants is, therefore, nondischargeable under 11 U.S.C. § 523(a)(2)(A). The Plaintiff additionally alleges that the Defendants, with the intent to deceive, used a materially false written statement regarding their financial condition on which the Plaintiff reasonably relied and that the debt owed by the Defendants is, therefore, nondischargeable under 11 U.S.C. § 523(a)(2)(B). Finally, the Plaintiff contends that the debt owed to it by the Defendants is the result of a willful and malicious injury and, therefore, nondischargeable under 11 U.S.C. § 523(a)(6). For the reasons set forth below, the Court determines that Defendants are entitled to a discharge under 11 U.S.C. § 727(a), but a portion of Roy Wayne Ireland's debt to the Plaintiff is not discharged pursuant to 11 U.S.C. § 523(a)(2)(B).

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. §§ 157(b)(2)(I) and (J). The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## **FINDINGS OF FACT**

This Court held a two-day trial on November 1 and 2, 2010 and heard the testimony of Ken Dozer, Vice President and Senior Lending Officer for KNB, Lawrence Ireland, father of Wayne Ireland and part owner of Ireland Heating & Cooling, Ronnie Pence, President and Chief Executive Officer for KNB, Matt Mardis, Asset Manager for KNB, Curtis Brunson, owner of Brunson Real Estate which manages IHC of Kentucky's real estate, Chrystal Ireland, Anthony Rossini, owner of Digital Lifestyles, and Wayne Ireland.

2

In 2007, Roy Wayne Ireland and Chrystal R. Ireland decided to build their "dream" home. In order to finance this construction, the Defendants applied for a loan from Kentucky Neighborhood Bank. In support of their loan application, the Defendants provided the Plaintiff with a signed statement of their personal financial net worth and a signed income statement for IHC of Kentucky, LLC ("2007 Personal Financial Statement").[2] The 2007 Personal Financial Statement showed listed assets of $1,959,091.65 and listed liabilities of $641,162.84, demonstrating a net worth of $1,317,928.81. The income statement, included with the 2007 Personal Financial Statement, showed IHC of Kentucky's income for the 311 Atcher Street property to be an estimated annual operating income of $30,432.

The 2007 Personal Financial Statements is the first evidence of inconsistencies that run rampant throughout this case. Wayne listed the value of the Atcher property as $515,000.00, with a $225,800.00 mortgage, leaving an equity cushion of $289,200.00 on the page showing IHC of Kentucky's income. The net worth page of the statement, however, listed this property's value as $591,000.00, a difference of $76,000.00. In this income statement, Wayne failed to include an allowance for vacancy as well as maintenance costs, which in 2009 amounted to reduced rental income of $9,200.00 and increased expenses of approximately $7,800.00. This means that rather than the $30,000.00 in estimated income, IHC more likely generated $15,000.00 in income in 2007.[3]

The 2007 Personal Financial Statement had a significant error in the inclusion of the Lafayette Life Insurance policies. It listed these policies as $100,000 for Chrystal and $105,000

---

[2] Both Defendants signed the document, but as discussed more fully below, Wayne created and maintained this document and Chrystal had little to no understanding of the document.

[3] Unfortunately, it is difficult to determine how much IHC of Kentucky actually generated in 2007 as this amount is not reported on the Defendants' 2007 Personal Income Tax Return.

3

for Wayne. These amounts, however, were not cash value amounts but rather the death benefits. While Wayne was only 32 at the time, Ronnie Pence did not find these cash values to be unreasonable considering that the Defendants were high net worth individuals. It is credible that an individual who claimed upwards of $500,000 in income each year would have chosen to use life insurance policies as an investment tool, thus creating high cash values. In fact, a death benefit of only $105,000 for such an income earner would be unreasonably low. It would be reasonable for KNB to rely on these amounts as representing cash value in making the loans to the Defendants.

Wayne claims that he told Ken Dozer that these amounts needed to be corrected to no value to reflect accurately the cash value of the Lafayette policies. Neither Mr. Dozer nor Mr. Pence has any recollection of this conversation. Even if the conversation did happen, Wayne failed to correct the document and, in fact, restated the incorrect amounts again in 2008. This happened when the Defendants were seeking permanent financing and provided KNB with an updated personal financial statement, dated October 30, 2008. It is also unlikely that Wayne made a mistake in listing these policies with their death benefits, instead of cash value. Wayne listed two insurance policies with Ozark Life on the 2007 Personal Financial Statement, as well as the updated statement a year later. Wayne listed both Ozark Life policies with values of zero.

The remainder of the 2007 Personal Financial Statement had numerous discrepancies and inconsistencies between its amounts and those listed on the Defendants' schedules. In an attempt to reduce the import of these numbers, the Defendants demonstrated that if one eliminated the amounts listed for collectibles, Corvette, furnishings, jewelry, two Lafayette life insurance policies, and miscellaneous other items (collectively $617,749.45), the Defendants'

4

assets would total $1,341,342.20. Their liabilities would remain at $641,162.84, establishing a net worth of $700,197.40. The Defendants' asset to liability ratio would be 2.09:1. The Plaintiff acknowledged that one factor it considers in making a loan is if the applicant has maintained a 2-to-1 asset to liability ratio. Based on the original report, the Defendants had a ratio of 3.06:1. While KNB might have still made the loan to the Defendants based on a more accurate statement of financial condition, the Plaintiff's representatives testified that they relied on the numbers presented by the Defendants and believed the Plaintiff was in a very secure position with significant liquid assets available to service the proposed debt.

In reliance on the information provided by Wayne and Chrystal Ireland, the Plaintiff loaned them $1,130,500.00 on October 31, 2007. Construction began on the "dream" home and progressed over the next year toward completion in time for the 2008 Parade of Homes. Draws were to be made on this loan as construction progressed. During this time, significant changes were made to the original construction plan. Wayne chose to upgrade the "smart home" technology that Digital Lifestyles, LLC installed in the home. This technology controlled almost all aspects of the home from the lights to the air conditioning. The Irelands also chose to install a pool which was not included in the original design. It does not appear that the Plaintiff exercised much oversight with regards to draws on the loan compared to progress on the house. Not surprisingly, the Irelands sought additional funding prior to completion of construction. On July 24, 2008, KNB loaned the Irelands an additional $283,390.00. There remained a significant number of subcontractors who were not paid on this project showing that substantially more than the borrowed funds were spent.

The home was basically complete in time for the 2008 Parade of Homes. While there remained a few items to finalize, the Irelands were able to show off their 8,000 square foot dream home and begin living in it. But with the completion of the home came also the need to secure permanent financing. The Plaintiff attempted to secure the permanent financing on the secondary market but failed primarily because the Defendants' credit scores had declined since the original construction loan. At this time the Defendants provided the Plaintiff with a new net worth statement dated October 30, 2008. This document now showed a net worth of $2,148,811. The cash and bank accounts had increased significantly due to a refinancing of the property of IHC of Kentucky.[4] The furnishings had also increased from $175,000.00 to $240,000.00. The newly constructed home represented the other significant increase to the assets and Wayne listed it as having a value of $2,345,000.00. The liabilities increased based on balances being carried on credit cards and the construction financing loan. But even with these changes, the net worth still showed an asset to liability ratio of 2:1.

The Defendants' attempt to characterize the weight of the asset to liability ratio as the most important factor is belied by the fact that even with this ratio maintained, the Plaintiff declined to extend permanent financing to the Defendants.

The Plaintiff could not provide the permanent financing for the debt, which had ballooned to nearly $2.4 million once all of the unpaid builder and sub-contractor invoices had been gathered. Banking regulations limit the amount that the Plaintiff could lend and this loan exceeded that amount. The Plaintiff attempted to secure the agreement of another bank to

---

[4]This refinancing occurred on June 17, 2008. The Plaintiff provided IHC of Kentucky with a loan of $388,000.00. Predictably, Wayne made no adjustment to the liability for the Ireland Rental property and still listed it as $225,800.84 on the 2008 net worth statement.

6

provide the financing through a participation loan.  This did not work out either.  It was through this loan application process that the Plaintiff became aware of Wayne's ownership interest in Ireland Heating & Cooling.  Due to inconsistencies throughout the documentation, it is unclear exactly how much of the corporation is owned by Wayne.

While the home was eventually sold in foreclosure after the bankruptcy, there was a particularly interesting bump in the road prior to foreclosure.  Digital Lifestyles had installed a system that offered complete control over almost all the systems of the house.  Unfortunately, this "smart" home also demonstrated a frightening scenario straight from *The Twilight Zone*.  When Digital Lifestyles realized that it would not be receiving payment from the Irelands, it made an attempt to recoup its losses.  To do this, an employee of Digital Lifestyles drove to the house and sent in an electronic signal disabling the entire house.  Everything in the house was frozen as of the moment the employee sent out the signal.  If a light was on at the time the signal was sent, it remained on.  If a television was off, it remained off and would not function.  The house basically became unlivable.  The Irelands had wished for a dream home that would cater to their every need through technology but that technology was being used against the Irelands because they did not pay their bills.

The Irelands and Anthony Rossini, owner of Digital Lifestyles, came to terms in which the Irelands would allow Digital Lifestyles to retrieve several pieces of equipment.  The end result was that Digital Lifestyles, through the use of self help, made certain that it would not lose as much as other contractors who dealt with the Defendants.[5]

---

[5] While it is unclear whether Digital Lifestyles ever physically entered on to the Defendants' property and committing a clear trespass, it seems that its conduct in directing an electronic signal at the house to cause injury would have been actionable and possibly not an appropriate debt collection process.  Digital Lifestyles, however, was dismissed as a party prior to trial and this issue was never directly before this Court.

Wayne Ireland's salary draw from Ireland Heating & Cooling for the six months preceding the bankruptcy indicates that he manipulated his draw so that his income would not violate the "Means Test." 11 U.S.C. § 707(b). Wayne had been drawing an annual salary for the preceding years in excess of $400,000.00, i.e., over $33,000.00 per month. For the six months prior to filing, however, Wayne only drew $5,000.00 a month. Wayne offered the explanation that he had to reduce his salary due to loss of revenue as well as an outstanding corporate tax liability. Ireland Heating & Cooling had not paid its withholding tax during 2008. According to the Internal Revenue Service, however, this tax liability still appears to be due. This suggests that Ireland Heating & Cooling did not use the funds available from Wayne's reduced salary to begin paying the unpaid withholding taxes. Additionally, the financial statements of the company, while showing a reduction in revenue, do not show a reduction in revenue correlating to the reduction in pay, ostensibly 75%.

The Plaintiff presented evidence demonstrating that the Defendants could not satisfactorily explain the ultimate disposition of certain personal property. The 2007 Personal Financial Statement indicated that the Defendants had $84,000.00 in jewelry in October 2007. This same amount was listed again on the 2008 financials given to the bank. Wayne testified that this amount included a Rolex watch, wedding bands, a Kentucky cluster ring, and various other pieces of jewelry. He would enter the purchase price into the report as an asset and categorize it as jewelry. Wayne allegedly gave the Rolex watch to James Holland in late 2008 or early 2009. Wayne did not list this item as a gift on his Statement of Financial Affairs which he filed with the Court on October 23, 2009.[6]

---

[6] The Defendants filed an amended Statement of Financial Affairs on June 25, 2010, reflecting a change in the proceeds from a yard sale and the contribution to Goodwill but made no mention of the Rolex watch.

8

Prior to Digital Lifestyles removing equipment from the home, six of the televisions were removed from the house. One of the televisions is currently in the Defendants' home on Karstwood Court. The Defendants offered no explanation as to the location of the remaining five televisions. While Wayne contended that he listed the value of these televisions as part of $6,500 in household goods and furnishings on Schedule B, Digital Lifestyles was willing to pay him $5,900 for all six televisions as late as June 18, 2009. While the televisions may have lost value in three months, it strains credulity to think that the Defendants only had $6,500 in household goods as of the date of the petition. Additionally, Digital Lifestyles valued the 60" television and the two 42" televisions at $3,000 and $1,000, respectively. Even losing value over three months, these items' value had not fallen below $550, the statutory limit for a single item qualifying as a household good. Schedule C attempted to exempt these televisions as household goods.

## CONCLUSIONS OF LAW

### Section 727(a)(4)

The Plaintiff argues that the Defendants should be denied their discharges pursuant to § 727(a)(4)(A). To prevail, the plaintiff must show by a preponderance of the evidence that the debtor "knowingly and fraudulently, in or in connection with the case made a false oath or account." § 727(a)(4)(A). "[T]he rule of this circuit is that the right to a discharge in bankruptcy should be liberally construed." *In re Newman*, 126 F.2d 336, 337 (6th Cir. 1942). "It is equally true, however, that Congress meant to grant a discharge only to the honest debtors and that the discharge provisions should be liberally applied to protect the debtor only where there was no

9

intent to violate the provisions of the law dealing with discharge." *Barnette Bank of Tampa, N.A. v. Muscatell (In re Muscatell)*, 113 B.R. 72, 73-74 (Bkrtcy. M.D. Fla. 1990).

The Defendants listed ownership interests in both IHC of Kentucky and Ireland Heating & Cooling, Inc. on Schedule B, but with no value. While the Plaintiff has asserted that the value of the apartment owned by IHC of Kentucky exceeds the mortgage by $100,000, the trustee chose not to pursue that property of the estate and presumably agreed with the valuation of zero for the company. The value of Ireland Heating & Cooling steadily declined as its revenue suffered losses due to the economy and the personal issues of Wayne Ireland with the contractors for the Anniston Way property. It is conceivable that Wayne's interest in this company, no matter the exact percentage, had no value.

Wayne adjusted his income down for the six months preceding the filing of his petition. Shortly after filing, he increased his income by adjusting the salary draws from the company. While he has not quite reached the astronomical levels of 2008, his own evidence shows he is well on his way for 2010. This smells of manipulation in order not to fail the Means Test. Wayne Ireland, as a part owner of Ireland Heating and Cooling, exercised significant control over the company. He could choose how much salary he would draw. Can a debtor go to his employer and ask not to be paid as much for the next six months so that he could file a Chapter 7 bankruptcy and not risk a finding of abuse? Wayne Ireland went to Ireland Heating & Cooling and asked not to be paid lavishly for six months. Then shortly after filing, Wayne went to Ireland Heating & Cooling and asked to have his salary increased. It is one thing to delay filing in order to reduce your income but completely different to manipulate your draw from a closely held corporation in order to reduce your income.

10

There also remains a tax liability for 2008 for withholding which Ireland Heating & Cooling failed to turnover to the Internal Revenue Service. It is unclear as to the exact trust tax amount for which Wayne Ireland is personally responsible since the IRS did not file a proof of claim in this case. While Wayne claims that the reason his income was reduced in 2009 was to pay this tax liability, it is unclear that this actually has occurred. Finally, it does appear that the property values placed on items in his schedules are significantly different from those on the signed documents delivered to the bank. Excluding real property listed on his schedules,[7] Wayne stated to KNB that he had $1,364,152 in assets on October 30, 2008.[8] By the time he filed his petition on October 23, 2009, Wayne stated that he had $26,105 in assets.

Even in terrible financial times, this is too great a loss to explain. Wayne either misrepresented his financials to KNB in order to secure financing, or has knowingly and fraudulently made a false oath or account in this case. While the evidence does not show with certainty which is the true state of affairs, this Court will rely on the trustee's inaction and a liberal construction of discharge to determine that based on the totality of the circumstances, Wayne Ireland has not made a false oath and will not be denied his discharge pursuant to § 727(a)(4)(A). That is, considering a totality of the particular facts and circumstances, the Plaintiff has failed to carry the required burden of proof. FED. R. BANKR. P. 4005.

---

[7] The schedules do not list the Rogersville property or the Atcher property. While Wayne testified credibly that the Rogerville property did not have significant value due to its location and development potential, it is interesting that he chose to not disclose it on his schedules. The Atcher property was included in the value of IHC of Kentucky, or zero.

[8] This amount does not differ significantly from the $1,228,749 claimed on October 1, 2007.

11

**Section 523(a)(2)**

In order for a debt to be non-dischargeable under § 523(a)(2), it must be shown that the debtor made a misrepresentation with the intent to defraud. The Plaintiff has alleged in the instant case that the debt is not dischargeable because it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). To except a debt from discharge under 11 U.S.C. § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representations; and (4) the creditor's reliance was the proximate cause of the loss. *Rembert v. AT&T Univ's Card Svcs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). The plaintiff need only show that the property was obtained either by false representation, false pretense or actual fraud, not a showing of all three. *In re Rapp*, 375 B.R. 421 (Bankr. S.D. Ohio 2007). The objecting creditor bears the burden of proof by a preponderance of the evidence to establish the debt is of a type excepted from discharge. *In re Molino*, 225 B.R. 904, 907 (6th Cir. BAP 1998). Exceptions to the discharge of a debt are to be strictly construed against the creditor and liberally in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 561-62 (1915). The inquiry into the requisite fraudulent intent to warrant an exception to discharge under 11 U.S.C. § 523(a)(2)(A) is subjective. *Field v. Mans*, 516 U.S. 59, 70-72 (1995). The requisite fraudulent intent may be established through either direct or circumstantial evidence. *In re Horton*, 372 B.R. 349 (Bankr. W.D. Ky. 2007).

Under 11 U.S.C. § 523(a)(2)(B), a debt may be declared non-dischargeable if four elements are met. "First, the statement in writing must be materially false. Second, it must be respecting the debtor's or an insider's financial condition. Third, it must have been reasonably relied upon by the creditor. Fourth, it must have been caused to be made or published with intent to deceive." *Citizens Union Bank v. Hayden (In re Hayden)*, 295 B.R. 402, 405-06 (Bankr. W.D. Ky. 2008) (citing *Steier v. Best*, 287 B.R. 671, 675 (W.D. Ky. 2002)). A narrow interpretation of the term "respecting the debtor's . . . financial condition" encompasses "a debtor's net worth or overall financial condition." *Caldwell v. Joelson (In re Joelson)*, 427 F.3d 700, 707-08 (10th Cir. 2005).[9] While it is clear that the 2007 Personal Financial Statement provided by Wayne was a writing concerning the debtor's financial condition, it is less clear that KNB relied solely on this statement in making the loan to the Defendants.

Wayne Ireland has played fast and loose with the facts and his financial affairs. When he is lying and when he is just demonstrating a reckless disregard for the truth is hard to determine. It might be possible that he did not intend to defraud the bank at the time of the first loan. He claims that he clarified his possible mistakes on the initial net worth statement to Dozer, but he failed to correct those misstatements. That failure to correct the errors in the 2007 Personal Financial Statement in the new financial statement he gave to the Plaintiff when he applied for permanent financing indicates his intent. By the time of the second loan application, Wayne Ireland had the necessary intent to defraud the Plaintiff. His debt to the Plaintiff for the second loan of $283,390 plus interest, therefore, will not be discharged pursuant to § 523(a)(2).

---

[9]The Sixth Circuit Bankruptcy Appellate Panel discussed more fully the adoption of this narrow interpretation in its opinion in *Prim Capital Corp. v. May (In re May)*, 368 B.R. 85, 2007 WL 2052186 (6th Cir. B.A.P. 2007) (unpublished).

13

The Defendants made significant efforts to demonstrate that their inaccurate signed Personal Financial Statements were not material. The Defendants could not reasonably argue that these documents were not inaccurate and misleading. When Wayne explained how he generated the numbers for the furnishings and collectibles, it was clear that while the numbers were not just made up out of whole cloth, they might as well have been. The crux of the Defendants argument is that if all of the items which were inaccurate were removed from the Personal Financial Statement, the asset to liability ratio would still be above 2:1. Because it would still be above the minimum threshold that the bank sets, the Defendants contend that it could not be material. In essence, the Defendants argue that even if they lied and told the bank that they had $10 million in assets and $1 million in liabilities (showing a 10:1 ratio), as long as the actual numbers resulted in a 2:1 ratio, it would not be material. This fails to recognize that a 2:1 ratio would not automatically result in the loan being issued, as can be seen from the Plaintiff not issuing permanent financing. So while the Defendants would have still maintained a 2:1 ratio and KNB might have still considered the construction financing, the inaccurate statements made by the Defendants are still material. The Plaintiff relied on these inaccurate statements to its detriment in making the loan.

The Defendants can not claim the misrepresentations on their 2007 Personal Financial Statement are immaterial. This would be like claiming that even if the Defendants had told the truth, it would not have mattered. This is confusing quantitative materiality with qualitative materiality. It is not a matter of how much the Defendants inflated their net worth but the fact that the Defendants did inflate their net worth.

The Defendants have also attempted to show a lack of intent by introducing the testimony of Ronnie Pence regarding their intent. Ronnie Pence has said, and probably would still say, that he did not believe that the Defendants had the intent to defraud the Plaintiff in October 2007. Everyone just wanted to build this dream home that would be a part of the Parade of Homes in 2008. The Plaintiff may have even been less diligent since it wanted to have the prestige from making such a large loan for such a large construction project. All that this shows is that Ronnie Pence did not subjectively believe that the Defendants had the subjective intent to defraud at the time of the first loan. But rather than rely on what the parties have said regarding fraudulent intent, a court may find the requisite degree of fraudulent intent when the defendant displays a reckless disregard for the truth. *In re Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992). With the lack of direct evidence of an intent to defraud, the requisite intent may be inferred from circumstantial evidence or course of conduct. *Id.* "Reckless disregard means 'not caring whether some representation is true or false . . . [and] is, at least for purposes of the Bankruptcy Code governing discharge, the equivalent of knowing that the representation is false and material.'" *Norton v. Cole (In re Cole)*, 378 B.R. 215, 222 (Bankr. N.D. Illi. 2007).

At trial, Wayne testified as to his knowledge that the Lafayette Life Insurance policies did not actually represent cash values. He listed the Ozark Life Insurance policies as having no value. If he did not understand that by placing a value on the Lafayette Life Insurance policies on the 2007 Personal Financial Statement would be representing them as having a cash value, he would have listed the Ozark Life Insurance policies with alleged cash values, that being the death benefit. Wayne claimed that the issue with the insurance policies was orally corrected. But then he made the exact same representation a year later after allegedly correcting it. He

15

developed the furnishings amount by listing their retail value but gave no consideration for depreciation. Additionally, if the Ireland disposed of the furniture, they did not remove its value from the report. The same is also done for other items. All of these inconsistencies show a reckless disregard for the truth.

While he may not have reached quite the requisite level of intent when he applied for the initial loan, he had reached that level of intent by the time the second loan was made. Whether Wayne republished the inaccurate 2007 Personal Financial Statement in applying for the second loan or made other materially false misrepresentation to secure the second loan, the Plaintiff has met its burden of showing by a preponderance of the evidence that this debt should not be discharged under either 11 U.S.C. § 523(a)(2)(A) or (B).

### Section 523(a)(6)

Finally, KNB argues that the debt should be nondischargeable under § 523(a)(6). Under this subsection, a debt is nondischargeable if it is for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). To clarify this subsection, the Supreme Court has stated that "only acts done with the actual intent to cause injury" come within its scope. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). In other words, "[t]he injury itself must be deliberate or intentional, 'not merely a deliberate or intentional act that leads to injury.'" *Bino v. Bailey (In re Bailey)*, 197 F.3d 997, 1000 (9th Cir. 1999) (*quoting Geiger*, 523 U.S. at 61).

The Court finds that the Defendants' actions do not constitute willful and malicious injury contemplated under § 523(a)(6). At most what has been shown in this case is that Wayne acted recklessly with regards to the truth. He did not have the requisite intent to cause the injury

16

to the Plaintiff. While he did allow Digital Lifestyles to remove property from the home, it was not established that the property had become fixtures or that the Plaintiff had a security interest in the property removed. While the equipment removed did have an impact on the functionality of the "smart house system," it did not cause a willful and malicious injury to any of the Plaintiff's property. There has not been a showing that he intended to cause this injury to the Plaintiff. Injuries inflicted recklessly do not come within the scope of § 523(a)(6), thus the Plaintiff has failed to establish a nondischargability claim under § 523(a)(6) as against the Defendants.

### CHRYSTAL IRELAND

Chrystal Ireland presented herself very interestingly on the stand. Chrystal holds a bachelor's of science in chemical engineering from the University of Kentucky. She indicated that she had no knowledge of the basis for any of the amounts on the net worth statements. She claimed that Wayne is a good husband: he, for example, takes her car to be serviced and makes sure that it always has a full tank of gas. Even when the "smart" house system was turned off and creditors were pounding at her door, she maintains that there were no issues with her husband. While listening to her testimony, the Court could not help but think of the movie, *The Stepford Wives*. Fortunately for Chrystal, she was quite credible on the witness stand. She had no actual knowledge or responsibility for the statements made to the Plaintiff. Wayne, therefore, shall be found solely responsible for these statements and solely responsible for the nondischargeable debt. Chrystal will receive her discharge since the Plaintiff failed to show that she had the requisite intent to defraud KNB when she signed the financial statement or other loan documents. She did not have a reckless disregard for the truth of those financials as she,

just like the bank, reasonably relied on Wayne's attestations. She is the honest but unfortunate debtor who will receive her fresh start in this bankruptcy.

## CONCLUSIONS

For the reasons stated above, the Court grants, in part, the relief requested by Plaintiff Kentucky Neighborhood Bank, and its exception to the discharge of Roy Wayne Ireland is granted regarding his debt owed to the Plaintiff in the amount of $283,390.00 plus interest pursuant to § 523(a)(2). This amount reflects the second loan made by the Plaintiff to the Defendants on July 24, 2008. The relief requested against Defendant Chrystal Ireland is denied, and she shall receive her discharge as to all debts. A separate order will be entered pursuant to Federal Rule of Bankruptcy Procedure 7058.